RICHARD S. MISSAN, Respondent, v GERALD SCHOENFELD et al., Appellants.

First Department, July 28, 1983

APPEARANCES OF COUNSEL

*Alvin M. Stein* of counsel (*Menachem J. Kastner* with him on the brief; *Parker Chapin Flattau & Klimpl,* attorneys), for appellants.

*Harold S. Elovich* for respondent.

OPINION OF THE COURT

FEIN, J.

Defendants Gerald Schoenfeld, Bernard B. Jacobs and Marie M. Sawicki appeal from (1) an order, Supreme Court, New York County (ANDREW TYLER, J.), entered September 30, 1980, which converted their motion to dismiss the amended complaint pursuant to CPLR 3211 (subd [a], par 7) to one for summary judgment pursuant to CPLR 3211 (subd [c]); (2) that part of a resettled order and interlocutory judgment of said court and Justice, dated September 16, 1981 and entered December 20, 1982 which determined the converted summary judgment motion by denying defendants' motion, and as to plaintiff's first four causes of action for an accounting ruled in plaintiff's favor and held that a partnership relationship among the parties existed and directed an accounting, with specified financial information to be exchanged, and directed defendants to answer plaintiff's sixth and seventh causes of action and the remaining issues on the accounting causes of action; and (3) that part of an order of said court and Justice entered October 26, 1982 denying plaintiff's motion for sanctions for failure to comply with the directed exchange of financial information but which directed that such exchange be made within 10 days.

In this action plaintiff seeks to establish that he was a partner in the firm of Gerald Schoenfeld and Bernard B. Jacobs. It is undisputed that plaintiff worked with or for the firm between 1968 and 1978. The issues are whether and when he became a partner, the terms of the partnership and when it expired. At all relevant times the practice operated out of offices in the Shubert Theatre. Schoenfeld and Jacobs' major legal project was the administration of the estate of Jacob J. Shubert who died in 1963. Schoenfeld and Jacobs spent increasing amounts of time during the relevant period involved in this litigation in activities

other than the practice of law as directors of the Shubert Foundation, Inc.

Much of the Shubert estate work was accomplished before plaintiff joined the firm in 1968. The firm had received interim fees of $260,000 prior to plaintiff's arrival. However, the bulk of the compensation for the firm's work on the estate was not received until 1977 when the estate litigation with the Attorney-General was settled. The firm then received a fee of $755,140. The gravamen of plaintiff's action is his claimed right to share in this fee, which defendants divided among themselves to his exclusion. He also seeks a share in other benefits received by defendants in connection with the work on the estate, the foundation and other Shubert enterprises.

The action was commenced in June, 1979, six months after the firm dissolved. At that time, Schoenfeld, Jacobs and Sawicki moved to a direct association with certain Shubert enterprises. Plaintiff was offered an opportunity to become an associate with the firm of attorneys which now represents defendants in this action and on this appeal. The original complaint was dismissed pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action, with leave to replead, based upon plaintiff's failure to allege sufficient evidentiary facts to demonstrate plaintiff and defendants were partners. Plaintiff served an amended complaint in February, 1980 attempting to cure the deficiency, in substance relying upon eight exhibits including the firm's letterhead, tax returns, Martindale-Hubbell listings and other items indicating plaintiff was a partner in the firm.

Plaintiff alleged that he was employed as an associate by Schoenfeld and Jacobs in 1968 with the promise that at the end of the first year of his employment he would be invited to become a partner if his work proved satisfactory and that upon the retirement of Schoenfeld and Jacobs, plaintiff would be afforded an opportunity to continue the practice.

It was further alleged that in December, 1968 the parties entered into an agreement admitting plaintiff as a member of the firm to receive a percentage of profits as determined

by annual mutual agreement subject to plaintiff's share in the expenses of the firm. Plaintiff further alleged that his share in the partnership increased from 17% in 1971 to 46% in 1978 and that his status as a partner between January 1, 1969 and December 31, 1978 was established by his receipt of a percentage of income, his devotion of full time to the activities of the partnership, and the representation of plaintiff as a partner on the firm's letterhead, opinion letters, tax returns, professional directories, pension plan and professional liability insurance policy. Plaintiff also alleged that defendants had promised to devote their full time to the partnership business and failed to do so.

The first cause of action sought an accounting as to the firm's receipt of the fee for legal services rendered to the Shubert estate, the Shubert Foundation, and other Shubert enterprises. Plaintiff claimed he was entitled to 46%.

The second cause of action alleged defendants secretly received the use of an apartment at 200 Central Park South, and also directors' offices, and appropriated these to themselves while expending the firm income in the pursuit of such benefits, as to which plaintiff sought an accounting.

The third cause of action sought an accounting as to compensation received by Schoenfeld and Jacobs for services rendered to the Shubert enterprises when they owed the law practice of the firm undivided loyalty and full-time attention.

The fourth cause of action, substantially the same as the third, alleged that in October, 1978, Schoenfeld and Jacobs had agreed with the Shubert enterprises to terminate the firm's law practice but to continue to provide the Shubert enterprises thereafter with similar services as heretofore. Plaintiff asserted that he performed a substantial portion of other work in the law practice on the basis of which he sought an accounting as to compensation received by defendants from Shubert enterprises.

The fifth cause of action, which was dismissed, is the subject of a separate appeal, and need not be discussed here.

The sixth cause of action sought 46% of the fees allegedly received by defendants from the Shubert estate on the basis of promises by Schoenfeld and Jacobs that plaintiff would receive his distributive share as soon as it was paid to the firm.

The seventh cause of action, apparently for punitive damages, alleged that Schoenfeld and Jacobs had fraudulently concealed receipt of the fee from the Shubert estate.

Attached to the complaint was a chart setting forth the partnership's gross and net income for the years 1971 through 1978, and plaintiff's and Schoenfeld's shares, purporting to demonstrate plaintiff's increasing share. Also attached were letterheads, letters, listings, tax returns and other documentation indicating that plaintiff was indeed a partner.

Defendants moved to dismiss the amended complaint, without leave to replead, for failure to state a cause of action (CPLR 3211, subd [a], par 7), or alternatively to require plaintiff to provide more definite statements of his causes of action and to separately state and number them (CPLR 3014, 3024, subd [a]) and to strike certain allegations as scandalous and prejudicial (CPLR 3024, subd [b]).

Neither side presented any evidentiary material, relying solely on legal argument.

By decision and order entered September 30, 1980, Justice TYLER advised the parties he would treat the motion as one for summary judgment under CPLR 3211 (subd [c]), giving time to each side to present evidentiary proof.

Plaintiff submitted an extensive affidavit tracing his history with defendants, stating that he joined the firm as an associate on the commitment that he would become a partner within a year if his work was satisfactory. He asserted that he became a partner on January 1, 1968 by agreement, under which he would receive a percentage of the profits and share in the expenses and any losses. He noted that thereafter the firm stopped withholding income taxes and plaintiff paid such taxes on an estimated quarterly basis, which practice continued until termination in 1978. He noted he had signed the firm's name in his own handwriting, on opinion letters, the distribution of part-

nership announcements, and the Federal income tax partnership returns for the years 1971 through 1978 which stated that he was a partner, the 1977 and 1978 returns stating he was responsible for a percentage of the profits and losses, although the 1976 return stated Schoenfeld and Jacobs each had 50% shares in the profits and losses with plaintiff having no such share. The returns also indicated plaintiff had an ongoing capital account in the firm. He noted Schoenfeld's admission in a 1974 letter to the I.R.S. that plaintiff was a member of the firm. He pointed to his inclusion as a partner in the firm's Martindale-Hubbell listing. He also submitted affidavits of a client's executive to the effect that plaintiff handled substantially all of the client's legal work and was known by the client to be a partner in the firm.

He also noted that Schoenfeld and Jacobs had devoted practically all of their time to the Shubert Organization and Shubert Foundation, and that he handled practically all of the firm's legal matters. He further repeated at length the promises allegedly made by the defendants that he would receive a share of the Shubert fee as soon as it was paid, but that they received it without his knowledge and diverted it to their personal use and benefit without his consent. He noted that the partnership had terminated when the defendants decided to devote all of their time to Shubert matters and insisted that he join a large New York firm, specifically the present attorneys for the defendants.

On the issue of the firm's other clients, he asserted he was told that they would be referred to the present attorneys for the defendants and not to the plaintiff, as previously promised.

Defendants Schoenfeld and Jacobs submitted a joint affidavit in response, tracing the history of the firm, demonstrating that their reputation and activities on behalf of the Shubert interests were their primary legal business, both before and after plaintiff became associated with the firm, and that a substantial portion of the estate work which resulted in the fee, which is the principal source of plaintiff's complaint, was concluded before plaintiff became associated with the firm.

Moreover, they submitted a written agreement which they asserted plaintiff had suppressed and which contradicted his contentions.

This writing among the parties, dated December 17, 1968, provided that effective January 1, 1969 the four parties (Schoenfeld, Jacobs, Sawicki and Missan) would "engage in the practice of law as partners for a term of one (1) year commencing January 1, 1969 and terminating December 31, 1969." The agreement provided that Schoenfeld and Jacobs retained all interest in equal amounts in the assets, capital, profits, goodwill and property of the partnership. Plaintiff had no right to examine the books and records or to have a voice in the management of the partnership, and was not responsible for partnership losses and expenses. His compensation was fixed at $25,000 plus 1% of the gross business of the partnership.

Defendants pointed particularly to paragraphs 11 and 14, as follows:

"Unless this agreement is extended by an agreement in writing beyond December 31, 1969, it shall terminate in all respects on that date, in which event neither Sawicki nor Missan shall receive any compensation or share of the profits of the partnership other than as set forth in this agreement * * *

"This agreement constitutes the entire understanding among the parties and it may not be altered, amended or extended except by a further agreement in writing."

Defendants noted that in 1970 the agreement was not extended in writing as required by the earlier agreement. They asserted plaintiff's share in the partnership's gross income was terminated pursuant to an oral agreement increasing his weekly salary to $640 which continued until February, 1972. From February, 1972 through December, 1978 plaintiff's compensation was $740 per week with additional bonuses and expense reimbursement.

Defendants further asserted that at no time after 1969 was plaintiff compensated on the basis of gross or net income and that at no time was there an agreement fixing a percentage of earnings or an obligation to share losses. They further asserted that plaintiff never made any claims

similar to those asserted in this lawsuit during the 11-year relationship. They also disputed other claims made by plaintiff. Some of their assertions were supported by an affidavit of codefendant Marie M. Sawicki asserting that there was no partnership agreement and that neither she nor the plaintiff was obligated to share in the losses or expenses of the firm, nor had any share in its capital assets or any voice in its management or any right to inspect its books and records.

Plaintiff's affidavit in response attempted to explain the discrepancies between his affidavit and those of defendants.

In a decision dated May 20, 1981, based upon which the resettled order and interlocutory judgment was entered December 20, 1982, Special Term ruled plaintiff had established that a partnership relationship existed and decreed an accounting of the law practice. The substance of the ruling was stated as follows: "Accordingly, this Court determines that the plaintiff has met his burden of establishing a partnership relationship and therefore an accounting of this law practice is decreed. However, the exact financial status of each of the partners, their rights to a percentage of the partnership profits, fees and other assets have not been established and remain issues in the case as well as those concerning plaintiff's knowledge of and waiver and/or consent not to share or participate in the Shubert case and the fees resulting therefrom. Those issues must be tried."

An order and interlocutory judgment, dated June 24, 1981, was settled on this decision. There is a dispute as to whether it was properly entered. Because of this confusion defendants did not serve and file a notice of appeal from that order and interlocutory judgment.

Upon motion, a resettled order and interlocutory judgment was rendered, dated September 16, 1981, which was not entered until December 20, 1982. Defendants appeal from that resettled order and interlocutory judgment.

Plaintiff asserts that this order is nonappealable because defendants failed to appeal from the prior order.

Defendants also appeal from an order dated October 20, 1982, entered October 26, denying plaintiff's motion to impose sanctions upon defendants for failure to exchange financial information but directing defendants to furnish such information within 10 days after service of a copy of the order. Defendants also appeal from so much of these orders as failed to grant their application to require plaintiff to serve a more definite statement of his causes of action and to separately state and number them.

■ Both parties expend large parts of their briefs and arguments on these procedural matters. The plaintiff relies on defendants' failure to appeal from the original order and interlocutory judgment. There is no merit to plaintiff's position. The original order apparently was never properly entered or served. Moreover, the resettled order/interlocutory judgment is, in any event, appealable because of material changes from the original version, unnecessary to detail here. Other procedural arguments advanced by plaintiff are equally without merit.

Defendants' procedural argument is premised on the assertion that the amended complaint is insufficient on its face and the court improperly converted the motion to a motion for summary judgment. Defendants overlook the well-settled rule that it is appropriate for the court to review plaintiff's evidentiary showing on a motion to cure pleading defects (*Rovello v Orofino Realty Co.*, 40 NY2d 633). Even if the amended complaint shares some of the defects in the original complaint, insofar as there is lacking an allegation that plaintiff would share responsibility for losses, which is essential to a claim of partnership, plaintiff's affidavit made such a claim. Moreover, defendants' 1977 and 1978 income tax returns and other exhibits sufficiently corroborate such claim so as to state allegations that there was a partnership agreement (*Matter of Wells*, 36 AD2d 471, affd 29 NY2d 931). Similarly, the affidavit gave sufficient notice as to defendants' alleged breach of trust required under CPLR 3016 (subd [b]).

■ On the basis of all papers before the court, it was appropriate for the court to proceed as upon a motion for summary judgment. Defendants' technical objections are without merit, as are defendants' contentions that sum-

mary judgment should have been awarded to them because plaintiff's assertions are unworthy of belief.

Read together, the various allegations of the amended complaint, the affidavits and exhibits are sufficient to raise issues of fact as to whether there was a partnership, and as to the first, second, third and fourth causes of action, as well as the sixth and seventh causes of action. Although the seventh cause of action may be read as merely asserting a claim for punitive damages and be dismissible as such, it may also be read as a cause of action for fraudulently concealing the receipt of the Shubert fees. A claim for punitive damages states no independent cause of action.

On a motion for summary judgment, the court is not to pass on the credibility of the witnesses, but rather must determine whether material issues of fact exist. The function is issue finding, not issue determination (*Sillman v Twentieth Century-Fox Film Corp.,* 3 NY2d 395, 404; *Esteve v Abad,* 271 App Div 725, 727). Special Term erred in determining there was a partnership. In coming to that conclusion, Special Term passed on the credibility of witnesses as well as the significance and meaning of plainly inconsistent documents, some of which are patently ambiguous. Testimony and perhaps further written evidence are required. Indeed, Special Term recognized this in its decision: "However, the exact financial status of each of the partners, their rights to a percentage of the partnership profits, fees and other assets have not been established and remain issues in the case as well as those concerning plaintiff's knowledge of and waiver and/or consent not to share or participate in the Shubert case and the fees resulting therefrom. Those issues must be tried." These very same reasons preclude summary judgment for defendants. It is plain that the essential elements of a partnership are the sharing of profits and losses as principals (*Martin v Peyton,* 246 NY 213; *Matter of Bennett v Pierce Inds.,* 28 AD2d 944). On this record there is sufficient to indicate a triable issue. It is notable that the December, 1968 agreement described the parties as partners, albeit it did not obligate the plaintiff as responsible for losses. There is clearly a sharp issue as to whether plaintiff, after

the expiration of that written agreement, continued to share profits or was merely being paid a salary geared to profits. The tax returns, letters and other writings are equivocal, pointing both ways.

Although subdivision 4 of section 11 of the Partnership Law, upon which Special Term relied in part, states that receipt by one of a share of the profits of a business is prima facie evidence that he was a partner, a strong case is presented rebutting the presumption. An issue of fact was plainly presented. Neither side was entitled to summary judgment. "The case is not clear enough to warrant summary judgment. (Cf. *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404.) In particular, there is an issue of fact as to the terms of the oral partnership agreement, and as to which, if any, of defendant's * * * activities were to be deemed part of the partnership business in which plaintiff would participate." (*Schwartz v Kozak*, 85 AD2d 507; see *Steinberg v Goodman*, 27 NY2d 304.) In this respect the resettled order/interlocutory judgment should be modified to leave for trial the issue of whether there was a partnership. It follows that it must also be modified to eliminate the direction for an accounting and an exchange of financial data which must necessarily depend upon whether a partnership existed.

The law is well settled that a partnership agreement may be oral (*Di Chiara v Calvo*, 32 AD2d 538; *Keen v Jason*, 19 Misc 2d 538, affd 11 AD2d 1039). On this basis defendants' contention that plaintiff is barred from alleging an oral agreement under section 15-301 of the General Obligations Law is unfounded. It may well be that, with respect to the year 1970, the period immediately subsequent to the one-year term of the written agreement, plaintiff could not be found to have been a partner in the absence of a written extension of the December, 1968 agreement, because of the express provision for termination unless extended in writing. However, that provides no reasonable basis for defendants' assertion that the parties were forever barred from subsequently entering into an oral partnership agreement. Patently without merit is defendants' contention that for eight years there could

have been no oral partnership agreement because of the absence of a writing after 1970.

Equally without merit is defendants' contention that the Statute of Limitations bars any claim for the period 1969 to 1973. Under section 74 of the Partnership Law, the right to an accounting does not accrue until dissolution of the partnership, here December 31, 1978, six months prior to the commencement of this action (*Nishman v De Marco,* 76 AD2d 360, app dsmd 53 NY2d 642). If a partnership relationship is established, plaintiff need only show the transaction of business by the partnership producing profits and losses to be accounted for (*Arrants v Dell Angelo,* 73 AD2d 633). It is undisputed that there are such profits here.

If a partnership is found, plaintiff's rights to additional amounts of such profits, particularly the Shubert estate fees, should be litigated in the accounting phase of the litigation (*Nishman v De Marco, supra*).

Plaintiff did not take a cross appeal from that portion of the resettled order/interlocutory judgment which dismissed his fifth cause of action. Hence, it is not now before the court, whatever its merits.

Accordingly, so much of the appeal from the order entered September 30, 1980 and the resettled order/interlocutory judgment, entered December 20, 1982 which seeks review of the refusal to require plaintiff to serve a more definite statement and separately state and number his causes of action, and to strike scandalous and prejudicial material, should be dismissed as nonappealable without permission, and the order entered September 30, 1980 should otherwise be affirmed, without costs.

The resettled order/interlocutory judgment entered December 20, 1982, should be modified on the law to the extent of striking the third and fourth decretal paragraphs declaring a partnership relationship and directing exchange of financial information, while permitting defendants to serve an amended answer to all the allegations pleaded in causes of action one through four and six and seven, within 20 days of service of a copy of the order to be entered hereon, and the resettled order/interlocutory judgment should otherwise be affirmed, with costs.

The order entered October 26, 1982 directing the parties to exchange financial data should be reversed, on the law and the facts and in the exercise of discretion, and the order vacated in the light of our disposition of the December 20, 1982 order, without costs.

KUPFERMAN, J. P., SANDLER, LYNCH and ALEXANDER, JJ., concur.

So much of the appeal from the order of the Supreme Court, New York County, entered on September 30, 1980 and the resettled order/interlocutory judgment of said court entered on December 20, 1982, which seeks review of the refusal to require plaintiff to serve a more definite statement and separately state and number his causes of action, and to strike scandalous and prejudicial material, is unanimously dismissed as nonappealable without permission, and the order of September 30, 1980 is otherwise affirmed, without costs and without disbursements. The resettled order/interlocutory judgment entered on December 20, 1982, is unanimously modified, on the law, to the extent of striking the third and fourth decretal paragraphs, and the resettled order/interlocutory judgment is otherwise affirmed. Appellants shall recover of respondent one bill of $75 costs and disbursements of this appeal; and the order of said court entered on October 26, 1982, is unanimously reversed, on the law and the facts and in the exercise of discretion, and the order vacated in the light of the disposition of the December 20, 1982 order, without costs and without disbursements.